IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DISNEY ENTERPRISES, INC.

       Plaintiff,                  CASE NO.: 5:08-cv-326-Oc-10GRJ

vs.

KOOL KLOWN PARTY PEOPLE, INC.,
DAVID F. CHAVECO, and MARISOL
PEREZ-CHAVECO

       Defendants.
_____/

DISNEY ENTERPRISES, INC.'S MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANTS KOOL KLOWN PARTY PEOPLE, INC., DAVID F. CHAVECO,
AND MARISOL PEREZ-CHAVECO

      Plaintiff, Disney Enterprises, Inc. (hereinafter "Disney" or "Plaintiff"), by and through its undersigned attorneys, Michael W.O. Holihan, hereby submits the following memorandum of law in support of its Motion for Summary Judgment against Defendants Kool Klown Party People, Inc., David F. Chaveco, and Marisol Perez-Chaveco (hereinafter known as "Defendants" or "Kool Klown"), and respectfully requests that this Court grant the Plaintiff's Motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, as there is no genuine issue as to any material fact and Disney is entitled to judgment as a matter of law.

Plaintiff's Motion and Memorandum for Summary Judgment against the Defendants is limited to Counts I and II in their Complaint: Copyright Infringement and Trademark Infringement.

## UNDISPUTED FACTS

1. Disney owns the exclusive copyrights or license to the properties listed on Exhibit "A"(hereinafter aggregately referred to as the "Copyrighted Properties"). Copyright certificates are attached aggregately as Exhibit "B".

2. Disney owns the exclusive rights to the trademarks listed on Exhibit "C" (hereinafter aggregately referred to as "Trademarks"). Trademark certificates are attached aggregately as Exhibit "D".

3. On May 6, 2008, Disney filed a complaint alleging copyright infringement, trademark infringement, unfair competition, and dilution against the Defendants. (See Docket Entry 1).

4. On May 30, 2008, Defendants filed a pro se Answer to Disney's complaint. (Docket Entry 2 and Exhibit "E" herein).

5. Disney has never authorized Defendants to reproduce, manufacture, distribute, sell or offer for sale any unauthorized reproductions of their Copyrighted Properties or Trademarks in conjunction with live children's entertainment services

(hereinafter referred to as "Infringing Costume Services"). See Chaveco Request for Admission ("RFA") No. 2, attached herein as Exhibit "F." [1]

6. Defendants have in the past infringed the Disney copyrights and trademarks by selling, distributing, offering for sale and advertising Infringing Costume Services. The Infringing Costume Services utilized Disney's copyrighted properties through the unauthorized use of adult costumes, which were either reproductions of the Disney characters or were substantially similar to the copyrighted elements of the works. See Chaveco RFA No. 3-5, 7, 13, Exhibit "F."

7. Defendants distributed, sold, or offered for sale, no less than three costumes bearing Disney's Copyrighted Properties in conjunction with live children's entertainment. See Chaveco RFA No. 3-5, Exhibit "F."

8. Defendants represented to third parties that the costumes were Disney's Characters. See Exhibit "G", screenshot of Defendants' Craigslist advertisement and Chaveco RFA No. 9, Exhibit "F."

9. Defendants have infringed the Disney trademarks by adopting and using the following Disney trademarks in conjunction with Infringing Costume Services in the State of Florida and Interstate Commerce: Tigger, Eeyore, and

---

[1] On December 15, 2008, Plaintiffs served Defendants with their Request for Admissions, which were mailed to the address provided to this Court by the Defendants. Defendants failed to respond to the Request for Admissions. Pursuant to Fed.R.Civ.P. 36, any admission not responded to within 30 days of receipt shall be deemed admitted. A copy of the Plaintiff's Request for Admissions is attached herein as Exhibit F.

Winnie-the-Pooh.   See Exhibit "G", screenshot of Defendants' Craigslist advertisement and Chaveco RFA No. 9, Exhibit "F."

11. Defendants failed to comply with the Case Management Order and this Court's August 7, 2008 deadline for Mandatory Initial Disclosures.

## MEMORANDUM

Rule 56(c) of the Federal Rules of Civil Procedure provides for entry of summary judgment in a case "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (U.S. 1986). The party filing a motion for summary judgment bears the initial burden of proof to show that there is an absence of evidence to support the non-moving party's case. *Id* at 322.

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be "no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof.

*Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1247 (11th Cir. Fla. 1999), citing *Celotex* at 322.

4

The Defendants have provided no evidence that a genuine issue of fact exists for trial. Where the non-moving party fails to present evidence establishing a genuine issue of material fact, the Court must grant summary judgment in favor of the moving party. *Sandoval v. Fla. Paradise Lawn Maint., Inc.*, 303 Fed. Appx. 802, 806 (11th Cir. Fla. 2008). "Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *United States v. Sieloff,* 2009 U.S. Dist. LEXIS 53863 (M.D. Fla. 2009), citing *Celotex* at 324. The evidence must be significantly probative to support the claims. *Sieloff*, citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248-49 (1986).

COPYRIGHT INFRINGEMENT

To prevail on its copyright infringement claim Disney must show "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Herzog*, at 1247-1248) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 359 (U.S. 1991) and *BellSouth Advertising & Publishing Corp. v. Donnelley Info. Publishing*, 999 F.2d 1436, 1439 (11th Cir. Fla. 1993).

Copyright registration certificates constitute prima facie evidence of the copyright ownership and validity of each design to which Disney claims exclusive rights. See 17 U.S.C. §410(c); and *Arthur Rutenberg Homes, Inc. v. Berger,* 910 F. Supp.

603, 607 (M.D. Fla. 1995).  Disney's copyrights are indexed herein as Exhibit "A" and the copyright certificates are attached aggregately as Exhibit "B". Disney's copyrights include, but are not limited to the following characters: Winnie the Pooh, Tigger, and Eeyore.

The Defendants, when answering Disney's complaint, failed to deny that Disney possessed the copyrights to the properties identified in Exhibit "A". By failing to deny, the Defendants should be deemed to have admitted that Disney does indeed possess the rights to the Copyrighted Properties identified in its complaint and as listed in Exhibit "A" to the Memorandum.

The second element necessary to prevail in a copyright infringement claim is proof that the defendant has copied the copyrighted work.  In the absence of direct proof, factual copying may be inferred from circumstantial evidence, either through establishing that the works are strikingly similar or through proof of access to the copyrighted work and probative similarity. *Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1301 (11th Cir. Fla. 2008), citing *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 n.6 (11th Cir. 2002).

The Defendants utilized Infringing Costumes that were not similar but identical to those owned by Disney, as is evident when comparing the Plaintiff's copyrights with the Defendants' Infringing Costumes. See Exhibits "B" and "G".

Moreover, the Defendants, by failing to respond to Plaintiff's Request for Admissions, have admitted that they rented, offered for rent, utilized, advertised,

sold, offered for sale, and/or distributed "INFRINGING COSTUMES" bearing "DISNEY COPYRIGHTS" which are substantially similar to the copyrighted elements of the works based on Disney's characters "Winnie the Pooh", "Tigger" and "Eeyore." See Chaveco RFA No. 3-5, Exhibit "F".

Given this admission, as well as the clear evidence of Disney's ownership of the copyrights and the Defendant's unauthorized copying of them, Disney should prevail on its copyright infringement claims against Defendants.

## TRADEMARK INFRINGEMENT

In order to prevail on a trademark infringement claim, the Plaintiff must show that the Defendant without its consent used its marks in commerce and that the unauthorized use was likely to cause confusion, or to cause mistake or to deceive. *See generally, Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983) and *Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Center*, 103 F.3d 196, 200 (1st Cir. 1996).

Trademark registration certificates constitute prima facie evidence that Plaintiff has the right to use such marks in commerce. 15 U.S.C. § 1057(b), § 1115(a) and *Equine Techs., Inc., v. Equitechnology, Inc.*, 68 F.3d 542, 545-546. The trademark registrations also provide an inference, which the Court may rely on, that the Plaintiffs are the senior users of the marks and that the marks are inherently distinctive. *The Keds Corp.*, *supra*, 888 F.2d at 220.; and *Equine Technologies*, 68 F.3d at 546. Copies of Disney's trademarks are indexed as Exhibit "C" and the trademark certificates are attached aggregately as

7

Exhibit "D". Disney's trademarks include, but are not limited to the following marks: Tigger, Eeyore and Pooh. Additionally, all of Disney's trademarks in question in the instant case have been declared incontestable. Pursuant to 15 U.S.C. § 1065, once a mark has become incontestable, its validity is presumed. *Dieter v. B & H Indus.*, 880 F.2d 322, 328 (11th Cir. Fla. 1989).

The Defendants, when answering Disney's complaint, failed to deny that Disney possessed the trademarks identified in Exhibit "C". By failing to deny, the Defendants should be deemed to have admitted that Disney does indeed possess the rights to the Trademarks identified in its complaint and as listed in Exhibit "C" to the Memorandum.

The Defendants utilized the Plaintiff's trademarks in order to advertise the Infringing Costume Services. Defendants utilized Plaintiff's "Winnie the Pooh", "Tigger", and "Eeyore" word marks to advertise Infringing Costume Services through and Craigslist advertisements and their website. See Exhibits "G" and "H". The Defendants have admitted their use of the infringing word marks. See Chaveco RFA No. 7, Exhibit "F".

The critical question is whether there is a likelihood of confusion, mistake, or deception between the registered mark and the allegedly infringing mark. *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502 (11th Cir. Fla. 1985). The Eleventh Circuit has identified the following factors to be considered in analyzing the likelihood of confusion:

1.  type of mark;

2.  similarity of mark;

3.  similarity of the products the marks represent;

4.  similarity of the parties' retail outlets (trade channels) and customers;

5.  similarity of advertising media

6.  defendant's intent; and

7.  defendant's intent.

*Id.* at 1506 and *Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330 (11th Cir. Fla. 1999).

## Type of Mark

There can be no question that Plaintiff's marks are extremely strong. For instance, Disney is and has been for more than 80 years one of the largest and most well known producers and distributors of feature films in the world. A significant portion of Disney's business has been the sale of merchandising products, including costumes, through licensees. Disney has created, developed and promoted its trademarks used on merchandising products through the expenditure of extraordinary efforts and millions of dollars. Disney receives substantial licensing revenues from the sale of these products.

Plaintiff's trademarks are highly recognizable. It would stretch the imagination that the Defendants in this action are not familiar with Plaintiff's well-known trademarks. Plaintiff's word marks such as "Eeyore", "Winnie-the-Pooh", and "Tigger"

are amongst the strongest and most distinct marks in the world. In view of the Plaintiff's marketing and sales efforts and long standing use of the marks, the Plaintiff's marks must be deemed to be strong marks worthy of broad protection, and certainly protection against Defendants' sale, offer for sale, and distribution of Infringing Costume Services utilizing counterfeit costumes.

**Similarity of the marks and similarity of the products the marks represent**

In the instant case the marks utilized by the Defendants are not only similar, but exact copies of the Plaintiff's marks. Compare the Plaintiff's trademarks with the Defendants' unauthorized reproductions of Disney's trademarked properties. See Exhibits "D", "G", and "H". "The greater the similarity between the products and services, the greater the likelihood of confusion." *HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1333 (M.D. Fla. 2003), citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983).

Where the Defendants are utilizing exact copies of the Plaintiff's trademarks on substantially the same types of products in a substantially similar manner, *the likelihood of confusion must be presumed. VMG Enterprises, Inc. v. F. Quesada & Franco, Inc.*, 788 F. Supp. 648 (D.P.R. 1992) (*citing Polo Fashions, Inc. v. Fernandez*, 655 F. Supp. 664 (D.P.R. 1987)); *see also Polo Fashions v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. N.C. 1987) (A presumption of a likelihood of confusion arises when counterfeit symbols are substantially identical to genuine symbols and are used in the same manner as the

genuine symbols are used) and *Porsche Cars N. Am., Inc. v. Lloyd Design Corp.*, 2002 U.S. Dist. LEXIS 9612, 49 (N.D. Ga. Mar. 26, 2002).

"Where a counterfeit item is virtually identical to the genuine item, the 'very purpose of the individuals marketing the cheaper [counterfeit] items is to confuse the buying public into believing that it is buying the true article.'" *Fila U.S.A., Inc. v. Nam Joo Kim*, 884 F. Supp. 491, 494 (S.D. Fla. 1995) (citing *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979)).

## Similarity of the retail outlets and customers, and similarity of the advertising media used

The Defendants are offering for sale and distributing Infringing Costume Services through the use of unauthorized reproductions of Disney trademarked properties in Clermont, Florida. Thus, the ordinary purchaser in the greater Orlando area, who is certainly familiar with the Plaintiff's marks, is likely to believe that the services sold by Defendants are related to, associated with, or sponsored by the Plaintiff and its company or companies. Plaintiff extensively advertises its products throughout the United States and the world, particularly in the greater Orlando area. Plaintiff frequently utilizes the internet as an advertising medium and the Defendants utilized the internet as their primary channel for advertising. As the services sold by the Defendants are identical to the types of services sold lawfully by Plaintiff and its authorized licensees, it is likely that the products appeal to the same members of the general public. *See e.g., Geoffrey, Inc. v. Toys 'R Us (Nosotros Somos Los Juguetes), Inc.*, 756

11

F. Supp. 661, 666 (D.P.R. 1991); *and Jordan K. Rand, Ltd. v. Lazoff Brothers, Inc.*, 537 F. Supp. 587 (D.P.R. 1982).

### Actual confusion

The Plaintiff in this action can prevail without any evidence of actual confusion, since a showing of actual confusion is not essential in order to find a likelihood of confusion. *HBP, Inc.* at 1336. All that is needed to prevail under the statute is a likelihood of confusion. Moreover, in this case, as noted above, where the marks and products are identical, the likelihood of confusion is presumed. *VMG Enterprises, Inc.*, at 661.

### Defendants' intent

Plaintiff submits that the Defendants intended at all times to benefit from the success and popularity of Plaintiff's marks. The fact that Defendants utilized marks that are identical to the ones owned by the Plaintiff in conjunction with character costumes identical to the ones regularly utilized by the Plaintiff establishes an intent to trade on Plaintiff's reputation and marks. *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22 (1st Cir. 1989) and *Veryfine Products, Inc. v. Colon Brothers, Inc.*, 799 F. Supp. 240 (D.P.R. 1992).

If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be

12

enough to justify the inference that there is confusing similarity. *Frehling Enters.* at 1340 (11th Cir. Fla. 1999).

Plaintiff's counsel sent cease and desist letters to the Defendants on February 6, 2008, March 10, 2008 and March 25, 2008, which informed the Defendants of their infringing conduct and demanded that they cease such conduct immediately. See Declaration of Michelle Sauls, Exhibit "I". Despite the Defendants' receipt of these letters, they willfully continued to infringe on the Plaintiff's copyrights and trademarks

## DAMAGES

Assuming that this Court concludes that the Defendants have infringed Disney's copyrights and trademarks through the sale, offer for sale and distribution of Infringing Costume Services, the next question for this Court is the appropriate award of damages.

Pursuant to 17 U.S.C. §504, the successful copyright litigant is entitled to any damage suffered and the infringers' profits or, at the sole election of the copyright owner, statutory damages. Statutory damages are awarded per copyrighted work infringed between Seven Hundred and Fifty Dollars ($750.00) and Thirty Thousand Dollars ($30,000.00), at the discretion of the Court. See 17 U.S.C. §504(c)(1). Further, if the Court finds that the infringement was willful, the Court at its discretion may raise the statutory award to One Hundred and Fifty Thousand Dollars ($150,000.00) per infringed work. §504(c)(2). At this time, Disney elects to recover statutory damages pursuant to §504(c).

Pursuant to 15 U.S.C §1117, Plaintiffs are entitled to recover three times the Defendants' profits or damages sustained by Plaintiffs, and the costs of this action. Alternatively, Plaintiffs may elect to recover statutory damages of $500 to $100,000 per mark infringed per type of goods or services sold, offered for sale, or distributed by the Defendants, as the Court considers just. If the Court finds that the Defendant's use of the counterfeit marks was willful, Plaintiffs may recover a maximum of $1,000,000 per mark infringed. At this time, Disney elects to recover statutory damages pursuant to §1117(c).

The Defendants have failed to produce adequate and truthful records concerning their sale or distribution of Infringing Costume Services. By failing to properly respond to these requests, the Defendants should be deemed to have admitted that they utilized three (3) of Disney's copyrighted and trademarked properties or works.

In *Walt Disney Co. v. Powell*, 283 U.S. App. D.C. 111, 897 F.2d 565, 569 (D.C. Cir. 1990), the Court held that for purposes of awarding statutory damages a separate work is one which has an independent economic value and is, in itself, viable. See also *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1116-1117 (1st Cir. 1993). There can be little doubt that characters such as "Tigger", "Eeyore", and "Winnie the Pooh" can stand on their own as independent works with substantial economical value. Accordingly, each of the three characters

infringed should be considered separate works for purposes of awarding statutory damages.

In determining the appropriate statutory damages to be awarded for each work, this Court may consider "several factors including the expenses saved and profits reaped by infringer, revenues lost by copyright holder as a result of infringement, and infringer's state of mind, whether willful, knowing or innocent." *Nintendo of Am. v. Ketchum*, 830 F. Supp. 1443, 1445 (M.D. Fla. 1993), citing *Nick-O-Val Music, Inc. v. P.O.S. Radio Inc.*, 656 F. Supp. 826 (M.D. Fla. 1987). In addition, the court should be guided by purposes of the Act including restitution to prevent unjust enrichment, reparation of injury, and deterrence of further wrongful conduct by defendant and others. *Id.* at 1445, citing *Feature Syndicate, Inc. v. Sunrise Mold Co., Inc.*, 569 F. Supp. 1475 (S.D. Fla. 1983).

The remaining factor to consider is whether or not the Defendants acted willfully. Disney never authorized or licensed Defendants to give, provide or solicit the sale of the display, staging or production of any live performance utilizing any Disney character costume(s), authorized or not, featuring the likeness or any of Disney's characters. Additionally the Defendants were aware that Disney owned the rights to "Winnie the Pooh", "Tigger", and "Eeyore" because they were put on notice by Plaintiff's counsel.  The Defendants received two cease and desist letters, which informed them of their infringing conduct.  See Exhibit "I".  Notwithstanding their receipt of these letters, the

Defendants continued to sell, offer for sale, and distribute the Infringing Costume Services through their website and their conduct should be deemed willful.

Taken together, Disney respectfully requests that this Court enter an Order awarding statutory damages of Ten Thousand Dollars ($10,000.00) per each of the copyrighted works, totaling Thirty Thousand Dollars ($30,000.00) in its favor and against the Defendants. Furthermore, Disney respectfully requests that this Court enter an Order awarding statutory damages of Ten Thousand Dollars ($10,000.00) per each of the trademarks infringed, totaling Thirty Thousand Dollars ($30,000.00) in its favor and against the Defendants. In sum, Disney requests that this Court enter an Order awarding a total of Sixty Thousand Dollars ($60,000.00) in its favor and against the Defendants.

### INJUNCTIVE RELIEF UNDER THE COPYRIGHT ACT AND LANHAM ACT

Both the Copyright Act and Lanham Act provide that injunctive relief may be entered against a defendant who has violated a plaintiff's trademarks and copyrighted properties. 17 U.S.C. §502 and 15 U.S.C. §1116. The four elements for granting a permanent injunction in a copyright infringement action include: 1) irreparable harm; 2) success on the merits; 3) a balancing of competing claims of injury to the parties; and 4) consideration of the public interest. *Warren Publ. v. Microdos Data Corp., 115 F.3d 1509 (11th Cir. Ga. 1997)* and *Sony Music Entertainment, Inc. v. Global Arts Productions*, 45 F. Supp. 2d 1345, 1347 (SD Fla.

1999). A party is entitled to a preliminary injunction in a trademark infringement or unfair competition action upon the same showing. *Levi Strauss & Co. v. Sunrise International Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995); *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200 (ND Ga. 1995).

As noted above, Defendants have admitted that Disney owns the rights to the Copyrighted Properties and Trademarks listed on Exhibits "A" through "D" hereto. They have also admitted that they have reproduced those Copyrighted Properties and utilized Disney's Trademarks to sell and distribute those unauthorized works. See Exhibit "E" (Defendant's Answer, specifically Defendant's Exhibit "D" to their Answer). Given this, Disney should be deemed to have prevailed on the merits on both its copyright infringement and trademark infringement claims.

The second element Disney must show is irreparable harm. It is well established that injury arising out of trademark infringement and public confusion causes irreparable harm. "Courts … subscribe to the rule that infringement of a trademark is, by its very nature, an activity which causes irreparable harm - irreparable in the sense that no final decree of a court can adequately compensate a plaintiff for the confusion which has already occurred." *Council of Better Business Bureau, Inc. v. Better Business Bureau of South Florida*, 200 U.S.P.Q. 282, 51 (SD Fla. 1978); *Tally-Ho, Inc. v. Coast Community College District*,

889 F. 2d at 1029 (11th Cir. 1989). Likewise, injunctive relief is generally granted to the prevailing party in copyright infringement action. See *Sony Music Entertainment, Inc.,* at 1347. Accordingly, this factor also supports entry of a permanent injunction.

The final two elements the Court must consider are a balance of the hardships the respective parties will bear if the injunction is entered and whether the public interest is served through entry of the injunction. With respect to the first factor, no hardship will fall on the Defendants by entry of the injunction. The only thing they will be prevented from doing is further violating Disney's Copyrighted Properties and Trademarks. Further, even if the issuance of a permanent injunction would have a devastating effect on their business, an injunction should still be granted by the Court since an infringer should not be permitted to construct a business around infringing activities. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F. 2d at 1255 (3rd Cir. 1983), and *Callaway Golf Co. v. Golf Clean*, 915 F. Supp. 1206, 1214 (M.D. Fla. 1995) ("A preliminary injunction will not cause Defendants to suffer any legitimate harm because they are simply being prevented from selling a product that they are not legally entitled to sell.") Accordingly, the balance of hardships is decidedly in favor of Disney.

The final factor is the public interest. The public needs to be protected from being misled and confused as to the source of the Defendant's infringing adult

size costumes featuring unauthorized reproductions of Disney's Copyrighted Properties and Trademarks. "In a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount." *Laboratories Roldan C. por A. v. Tex Int'l*, 902 F. Supp. 1555, 1569 (S.D. Fla. 1995). Likewise, "it is virtually axiomatic that public interest can only be served by upholding copyright protections and, correspondingly, preventing misappropriations of the skills, creative energies, and resources which are invested in the protected work." *Kevin Harrington Enters. v. Bear Wolf, Inc*, 1998 U.S. Dist. LEXIS 20597 (S.D. Fla. July 16, 1998), (citing 4 *Nimmer on Copyright*, §14.06[A]). The Plaintiff is gravely concerned with its lack of control over the Defendants' actions while the Defendants, disguised in counterfeit Disney costumes, are interacting with young children.

Based on the foregoing, Disney respectfully requests this Court to enter a permanent injunction against the Defendants enjoining them from further infringing Disney Copyrighted Properties or Trademarks or otherwise representing to the public that they are associated with, sponsored by or is in any way connected with Disney.

## CONCLUSION

Disney respectfully requests this Court to enter an Order granting Disney's Summary Judgment, including but not limited to awarding statutory damages for copyright infringement of Thirty Thousand Dollars ($30,000.00), statutory

damages for trademark infringement of Thirty Thousand Dollars ($30,000.00), for a total award of Sixty Thousand Dollars ($60,000.00) and entry of Permanent Injunction against Kool Klown Party People, Inc., David F. Chaveco and Marisol Perez-Chaveco.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Court by using the CM/ECF system and U.S. Mail to Kool Klown Party People, Inc, David F. Chaveco and Marisol Perez-Chaveco, 1148 10th Street, Clermont FL 34771; this 3rd day of September 2009.

/Michael W.O. Holihan/
Michael W.O. Holihan
FL Bar No: 782165
Stephanie Boomershine
FL Bar No: 0046667
Holihan Law
1101 North Lake Destiny Road
Suite 275
Maitland, FL  32751
Phone: (407) 667-8811
Fax:     (407) 667-0020
Michael.holihan@holihanlaw.com
Stephanie.boomershine@holihanlaw.com
Attorneys for Plaintiff